May it please the Court. Chandler Gregg on behalf of Appellant Spencer Knapp and his wife, Elizabeth. This case involves the exposure of my client, Spencer Knapp, to the toxic chemical TCE, which was in his drinking water as a child. It was in his parents' drinking water when he was in utero and all of that in the small community, southwest community of the villages of Silver Creek, which is near Joplin, Missouri. FAG Ball Bearings facility in Joplin, Missouri dumped TCE onto the ground, poured it through the sewer system and contaminated the drinking water in this Missouri community. All of FAG's tortious conduct occurred in Knapp's contamination and exposure and poisoning occurred in Missouri. Missouri is the only State that has jurisdiction to hear this case. We are challenging the district court's grant of summary judgment based on the trial court's application of Texas' two-year statute of limitations and that's based on the court's interpretation of Missouri's borrowing statute. We're also challenging the court decision, which the court only gets to if it decides that Texas' statute would apply. We're also challenging the court decision of when this claim accrued and we're asking this court to reverse the district court decision. Frankly, as it relates to the borrowing statute, the district court decision is inconsistent with the statutory language of the borrowing statute and it's inconsistent with the purpose of the borrowing statute. First, as it relates to the two overarching errors of law, either of which would require reversal, the first is the court erring to find that this case originated in Missouri so as to apply Missouri's five-year statute of limitations. If Missouri's five-year statute of limitations applies, it's undisputed. Plaintiff's claims are timely. It erred in instead interpreting the case under Missouri's borrowing statute as originating in Texas, where my client was living when he was diagnosed with multiple sclerosis. And really, the district court and the defendants, you'll see, there's a recurring theme as relying on cases that don't have to do with latent disease or toxic exposure. And the secondly, no Missouri court has ever imported the State law, some other State's law, when all of the tortious conduct occurred in Missouri. Here we're talking about conduct that occurred from FAG bearings over the course of decades only in Missouri. No Missouri court has ever imported the law of a State with no jurisdiction because, frankly, that is contrary to the entire purpose of the borrowing statute. The purpose of the borrowing statute is to ensure that the law of the State with the closest connection to the litigation applies. The second error, as I said, which the court really only gets to if it finds that Texas law should apply, is finding as a matter of law that this claim accrued when Spencer Knapp's brother sent him some articles and told him he should sue FAG bearings. His brother, who works for IBM, who has no medical background whatsoever, and that issue really then you only get to if they get past the borrowing statute such that Texas law would apply and only if this court decided that this claim, all of which conduct took place in Missouri, originated in the State of Texas. Counsel, you seem to be arguing that this court does not have to worry about where the claim was capable of ascertainment, only where the damage occurred. Isn't that contrary to our case law? So if you look at the borrowing statute, Your Honor, I don't believe that's contrary to the case authority. If you look at the borrowing statute, it talks about whenever a cause of action is fully barred by the laws of the State in which it originated. So the borrowing statute doesn't say anything about capable of ascertainment. What the borrowing statute says is it's talking about where did it occur, where did it originate. Now, and that's why jurisdiction is important. As it relates to that, what I will tell you is, as they argue in their brief, there have been cases that really talk, that kind of conflate those two issues within the borrowing statute, because it goes, the analysis is where did it originate, that equals accrued, that equals capable of ascertainment. But if that's the analysis, if the court is going to, frankly, I think reading the statute, those are two separate things, where and when. But if the analysis is that the borrowing statute needs to be applied for both where and when, then the relevant cases are Missouri's toxic exposure cases that talk about when a claim is capable of ascertainment. And in those cases, uniformly, every case, Elmore, starting with Elmore, said it is not until the character of the condition and its cause came together for a plaintiff. So if we're interpreting the borrowing statute to the Is it a question of when the person is on notice to make reasonable inquiry? And in Close to a definitive conclusion of cause? I think, well, what the cases in Missouri have said is that the, that is a quote, not until the character of the condition and its cause came together for a plaintiff. Now, if the question, if the court evaluates this in terms of constructive knowledge or reasonable diligence, then there is a fact question there. What we're talking about is a man who was diagnosed in 2017. His brother then sent him articles. He talked to all of his doctors, asking them, and this is what the record illustrates. He asked them, is my MS related to this contamination that occurred when I was a child? And none of them could tell him. So he then hired counsel. We hired an expert in 2018. The expert, and there's an affidavit, it's at 274, 275, or 261, 262, and the expert couldn't determine that. He had to collect all the medical records, and then he had to review. He's already even inquiring. It isn't even a question of whether he reasonably should have inquired. He was already inquiring about whether the cause was the TCE and job. Exactly, Your Honor. And so that's really what the courts have said. I'm just saying, why isn't that enough to say, as a matter of law, he was on notice, he was on reasonable inquiry notice, and whether he could prove up the claim within two years is not the standard. Well, the standard is, I mean, under 965A, either the CERCLA or under Texas, if you decided that Texas's statute of limitations should apply under Texas law, it all says there has to be objective verification. And that is straight out of those cases. It's not, oh, I have, and in fact, the Missouri cases that deal with that talk about that, that it is not enough. Mere suspicion is not enough. Inquiring, but having no medical person who ties it together is not enough. And the reason for that, what the courts have said, and the Martinez and the Childs case, both out of Texas Supreme Court, if you got to that issue, say, is that a plaintiff, an individual, shouldn't be required to have more diligence and knowledge than his medical doctors. So if he's inquiring, and if you look at the cases that we have cited, and that's really regardless of whose accrual rules you use, if you look at the actual toxic exposure cases. And the other thing the courts have said is that you don't want to encourage anticipatory violence. You want the parties to actually do an investigation and ensure that they have a claim before they start going out and suing individuals. And so as it relates to the borrowing statute, I mean, frankly, I think the logic of the circumstances here is that every bit of the defendant's conduct occurred in Missouri. And so them trying to inject into this case a statute of limitations from Texas, because that's where the plaintiff was living when he found out about his diagnosis, has been rejected by the Missouri Supreme Court in the Elmore case. There's really three things about the Elmore case, the Supreme Court decision in Missouri, that are important. One, it rejected the defendant's claim, the claim that they're making here that it matters where the plaintiff lives when he's diagnosed. Two, it discussed that plaintiff was primarily exposed and poisoned in Missouri. And because of that, that's whose statute of limitations apply. And then number three, as we talked about earlier, it sets the standard under where and when, when it is not until the character of the condition and its cause can be rejected that it came together for a plaintiff. And the courts have said that even with respect to a disease like asbestosis, which what I'll tell you when it comes to the reasonable inquiry issue, is far different even than a case like we're talking about here. TCE, it doesn't leave an imprint on your body. And so what you have here is a situation where an individual is diagnosed with multiple sclerosis, and they're TCE unlike asbestos. Asbestos, if you have asbestosis, it's because of the asbestos exposure. And here what we're talking about is a disease process that is complicated. Plaintiff was reasonably diligent in looking into that and investigating that. What the cases have said is there must be objective measure linking the disease to the defendant's conduct. And here there was none until November of 2019. In terms of accrual of the cause of action, as it relates to if the Court found that Texas statute of limitations would apply, I would point the Court to this decision, the Eighth Circuit's decision in Foster, where it evaluated a discovery rule in an asbestos case. And I think as the Court's aware, under either Section 9658 or under Texas law, it is the discovery rule and there must be some objective measure. In Foster, there was much more information available to the plaintiff to put him on notice and judge what the Court said there is. That's not enough. And that's a decision from this Court. This Court was able to make a decision that is almost just the same as 9658 or Texas's. It appears I have three minutes left, and I'm going to save that for rebuttal, if that's okay. Thank you. Thank you, May. Thank you for your argument. Mr. Salgado, we'll hear from you. Good morning, Your Honors. May it please the Court, Richard Salgado, representing F.A.G. Bearings, LLC. With due respect to opposing counsel, this case is not about the logic of the circumstances. This case is about the law. It's about what the statute actually says here. And the borrowing statute in Missouri, 516190, it supplants any other choice of law analysis. This is not a substantive choice of law analysis the Court has to do. Instead, we have 516190. It says that it looks to where the claim originated, and then case law further defines that. Under the borrowing statute, originated means accrued. That's the meaning of Missouri Supreme Court in Elmore. It's not where things happened. It's not where events happened. And this is explicitly said in various other cases. This is throughout the case law. Elmore, which plaintiff cites repeatedly and heavily in his case, makes it really clear that we're talking about where it accrued. Now, accrual here, there is no question on the table whatsoever here that this case accrued at the earliest before 2017. That's what plaintiff originally pled in their complaint was 2017. Now they argue accrual happened in 2019. But there's no argument here that it accrued back in the 1980s or 1990s. So all this discussion of the facts of where the contamination happened, where the exposure happened, that's red herrings. That's completely irrelevant for analysis here today. All we are focused on is where did that accrual happen. And really, frankly, it comes down to did that accrual happen in 2017 or did that accrual happen in 2019, which is when Plaintiff's Counsel hired a retained expert who . . . What standard do you think we apply to decide that question? I think you start first thing with Missouri law. You look at where it was capable of ascertainment. And so that's the initial test is where is it capable of ascertainment. And to walk you through this, capable of ascertainment is further defined, and this is from the Elmore case and the Powell case, which are both Missouri case law. Capable of ascertainment is when it's capable of being ascertained by a reasonable person using reasonable diligence. So we're talking here about inquiry notice. At that point, does this individual have evidence to place a reasonably prudent person on notice of potentially actionable injury? That is the law. We're staying in Missouri for that moment first to see if the borrowing statute applies. And that's what it says under the case law. Now, is that a conclusion of law that we review de novo or is that a finding of fact by the district court? For sure, whether something is ascertainable can, in some instances, be a fact question. However, it's also the Missouri courts have found and made it clear that it doesn't have to be. Where it is . . . where reasonable minds can look at this and see that a reasonable person in that circumstance would have been on inquiry notice, that is a question of law. That is something that is not a fact question. And here, when you look at the facts as they are undisputed here, we have an individual . . . So the district court here reached a conclusion of law, correct? Yes, Your Honor. And that's reviewed by us de novo? That is correct, Your Honor. But you want us to say we agree with the district court that as a matter of law, the plaintiff was on inquiry notice. The other option would be to say that's a disputed issue of fact for a trial. That is correct, Your Honor. And you say it's not a fact issue in this case because why? Because the facts here that are undisputed lead to no other reasonable conclusion. So the facts that are undisputed here are that Mr. Knapp knew that he grew up in an area in which he was exposed to trichloroethylene. That's undisputed. It's in the record that his father was even an expert witness and a plaintiff in some of the prior litigation involving this toxic contamination. So Mr. Knapp knew about the TCE. Mr. Knapp knew in 2017 that he had been diagnosed with multiple sclerosis. At that time, he also was emailed by his brother and told that there had been other litigation in which other plaintiffs had successfully sued over exposure to trichloroethylene from FAG bearings that they alleged caused autoimmune disease, which, of course, multiple sclerosis is an autoimmune disease. At that time, he hired a counsel. He hired Mr. Gregg's firm to represent him. Within the year after that, he then commenced his own research online and read more articles about alleged possible links between trichloroethylene and autoimmune illness. Later in 2018, his brother emailed him additional articles that mentioned the link between autoimmune illness and trichloroethylene. At that point, he had ample, and those are all undisputed facts. That's all in the record there. And that's all undisputed. And based on that, any reasonable person in his situation would be on inquiry notice. And indeed, Your Honor, as you pointed out, that's exactly what he was doing. He retained a plaintiff's law firm to represent him in this case. They then waited, that plaintiff's law firm, in conjunction with the plaintiff, then waited from 2017 through all of 2018. Finally, in November 2019, is when he finally had the meeting, the physical examination by the retained expert who plaintiff's counsel uses in many cases there in Springfield, Missouri. And that was when this individual who had testified in many cases for them said, yes, this was caused by this. That could have happened in 2017. That could have happened in 2018. That could have happened early in 2019. He could have filed suit by 2019. There's absolutely, we had a two-year statute of limitations here. He didn't have to file suit based on speculation and guesswork or anything like that in 2017 or 2018. He had two years of inquiry notice in which to go out, diligently find out information, and then file a case. Instead, he hired the plaintiff's law firm, and frankly, they sat on it for the ensuing couple of years until finally in 2019, they retained this expert in Springfield, comes up with this opinion. That right there is inquiry notice. And any holding contrary to that would chip away at what inquiry notice is. It would convert it into a standard of absolute perfect knowledge of the claim. The other scary thing about this is it empowers plaintiff's counsel in this circumstance to really decide when a statute of limitations begins to accrue, especially in cases like this one where, frankly, there are questions out there about can TCE cause MS. Absolutely. We won't hide from the fact that our position, my client's position on this, is that TCE can't cause MS. That's probably why Mr. Knapp's doctors, who he met with, didn't tell him that MS was caused by TCE because they've taken a Socratic oath. They are doctors who are there to diagnose properly and not give a hired opinion. But the problem here is if a court were to set a standard where a plaintiff's counsel can simply sit on a claim like this, the more speculative the claim is, the more empowered they are to decide that statute of limitations and then one day retain their preferred hired expert to give the opinion they want, we have a really scary standard and a completely gutsy inquiry notice. So again, beyond that, I think that the case law I'd point the Court here to is if we look at, there's a case, Pirtle v. Kahn, which is 177 Southwest, 3D, 567. That's a great case I'd refer the Court to when you really look at what the Texas statute of limitations and the Texas discovery rule actually says. That one sets it out very clearly. Because once we've decided that point of ascertainment, we do default to Texas law there to figure this out. And the discovery rule does not linger until a plaintiff learns of actual causes and possible cures for his injuries. Rather, the cause of action accrues when the plaintiff knows or through the exercise of reasonable care and diligence should have done so. The inquiry notice, that's what it is. And under that, this claim was barred two years after it accrued. Either in 2017, 2018, it makes no difference. The claim was completely time barred before Mr. Knapp filed his lawsuit. And that's frankly what I have to say. I'm happy to answer any further questions the Court might have. Thank you for your argument. Thank you. Mr. Gregg, we'll hear from you in rebuttal. Thank you, Your Honor. What the cases say is that inquiry notice is not enough. The Reasons Court, that is Missouri State Court decision, said that we cannot say as a matter of law an employee was aware he was sustaining permanent medical injuries and they were related to his occupational environment. So at most, it creates a jury question. Phrases such as I figured or maybe do not provide sufficient proof to sustain summary judgment. It goes on further to say it is not enough to suspect a problem in a causal connection to start the statute of limitations ticking. Those are the toxic exposure, latent disease cases. We've cited to about five of them from Missouri courts. The Missouri Supreme Court in Elmore which is controlling, Reasons Court, Giles Court, the Crub Court, there are numerous courts from Missouri who have held that if you're evaluating capable of ascertainment in a toxic exposure case, inquiry notice is not enough. As it relates to, and so they do not get past the Missouri's borrowing statute. Missouri law should apply based on the language of the statute. What's your best case that says inquiry notice is not the standard? Or are you just saying that it's not satisfied on these facts? Well, it is not satisfied on these facts. You have a case that says it's not even the right standard? Yes, Your Honor. So the Elmore case says that. The Giles case says that. The Reasons case says that. Now, not in the words of inquiry notice is not enough, what those cases said, they go through the facts where in one of them. That's what I mean. Aren't you really just arguing that on a particular set of facts, a particular plaintiff in those cases was not deemed to be on notice as a matter of law? Even when his doctor, yes, in those cases reasons, even when his doctor told him that maybe his condition was caused by the exposure. And so, sure, you may have to have inquiry notice, but the question is, does that bar you as a result of the statute of limitations and is that when the claim accrues? What you'll see from their cases are they rely almost exclusively on non-exposure cases. And in the case from Texas, if you decided that Texas's statute of limitations should apply to this claim, I'd ask you, first of all, please read the statute, the important, the cases that talk about you're not importing in a State law from a place that has no jurisdiction. So, but if you get to the decision, 9658, those cases say it requires objective evidence. There was no objective evidence whatsoever until November of 2019 in this case. Thank you, Your Honors. All right. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course.